AO 91 (Rev. 11/82) — CRIMINAL COMPLAINT — COPY

| UNITED STATES DISTRICT COURT | CENTRAL DISTRICT OF CALIFORNIA |
|---|---|
| UNITED STATES OF AMERICA<br>v.<br>GERARDO SOTELO | DOCKET NO.<br><br>MAGISTRATE'S CASE NO.<br>**SA 18 - 233M** |

Complaint for violation of Title 18, United States Code, Section 1951(a)

| NAME OF MAGISTRATE JUDGE<br>THE HONORABLE DOUGLAS F. MCCORMICK | UNITED STATES MAGISTRATE JUDGE | LOCATION<br>Santa Ana, California |
|---|---|---|

| DATE OF OFFENSE<br>May 1, 2018 | PLACE OF OFFENSE<br>Los Angeles County | ADDRESS OF ACCUSED (IF KNOWN) |
|---|---|---|

FILED
CLERK, U.S. DISTRICT COURT
MAY -2 2018
CENTRAL DISTRICT OF CALIFORNIA
BY                   DEPUTY

LODGED
2018 MAY -2 AM 10:22
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
SANTA ANA

COMPLAINANT'S STATEMENT OF FACTS CONSTITUTING THE OFFENSE OR VIOLATION:

[18 U.S.C. § 1951(a)]

On or about May 1, 2018, in Los Angeles County, within the Central District of California, defendant GERARDO SOTELO ("defendant") obstructed, delayed, and affected commerce and the movement of articles and commodities in commerce, in that defendant knowingly and willingly robbed Chevron, located at 16725 Pioneer Boulevard, Artesia, California, a business that was engaged in interstate and foreign commerce and which was in an industry which affects interstate and foreign commerce, by unlawfully taking and obtaining personal property consisting of U.S. currency in the presence of an employee of Chevron, against his will, by means of actual and threatened force, violence, and fear of injury, immediate and future, to his person.

BASIS OF COMPLAINANT'S CHARGE AGAINST THE ACCUSED:

(See attached affidavit which is incorporated as part of this Complaint)

MATERIAL WITNESSES IN RELATION TO THIS CHARGE: N/A

| Being duly sworn, I declare that the foregoing is true and correct to the best of my knowledge. | SIGNATURE OF COMPLAINANT<br>**RYAN J. STEARMAN**     /s/<br>OFFICIAL TITLE<br>Special Agent, Bureau of Alcohol, Tobacco, Firearms and Explosives |
|---|---|

Sworn to before me and subscribed in my presence,

| SIGNATURE OF MAGISTRATE JUDGE[(1)]<br>**DOUGLAS F. McCORMICK** | DATE<br>May 2, 2018 |
|---|---|

[(1)] See Federal Rules of Criminal Procedure 3 and 54

AUSA S. Tenley x2829   [REC by AUSA: Detention]

## **AFFIDAVIT**

I, Ryan J. Stearman, being duly sworn, declare and state as follows:

### I. INTRODUCTION

1. I am currently assigned to the ATF Los Angeles Field Division, Santa Ana Field Office, and have been employed by the ATF since September 2005. In the course of my employment as an ATF Special Agent, I have assisted in and conducted numerous investigations involving criminal street gangs, possession of firearms by prohibited persons, possession of stolen firearms, possession of machineguns, the illegal distribution of firearms, and burglaries and violent crime to include robberies. As an ATF SA, I have also participated in numerous federal and state search and arrest warrants involving individuals engaged in conspiracies to commit robberies and burglaries, unlawfully traffic firearms, unlawfully take firearms, unlawfully possess firearms, as well as other criminal activity. Additionally, I have participated in the collection and seizure of cellular telephone records, firearms records, and other types of evidence that documents activities in both the manufacturing and distribution of controlled substances.

2. To successfully conduct these investigations, I have used a variety of investigative techniques and resources, including physical and electronic surveillance, wire interceptions, cellular telephone analysis, interviews, the utilization of undercover agents and informants, and the review of various databases and records. I have also received training

during the course of my employment as an ATF Special Agent in various topics to include but not limited to: robberies affecting interstate commerce, illegal trafficking of firearms, the utilization of informants, the activities of criminal street gangs, asset forfeiture, and conducting surveillance and wire interceptions. Through these investigations, my training and experience, and conversations with other experienced agents and law enforcement personnel, I have become familiar with the methods used by individuals to commit robberies; to smuggle, safeguard, and store firearms; to distribute firearms; and to collect and launder related, illicit proceeds.

## II. **PURPOSE OF AFFIDAVIT**

3. This affidavit is made in support of a criminal complaint charging GERARDO SOTELO with interference with commerce by robbery, in violation of 18 U.S.C. § 1951(a).

4. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

//
//

### III. STATEMENT OF PROBABLE CAUSE

#### A. Background

5. I am the lead ATF agent assigned to the investigation of a series of robberies of 7-11 and gas station convenience stores in Orange and Los Angeles Counties occurring between October 4, 2016 and May 1, 2018. To date, this includes sixteen robberies in total, all of which appear to have been armed. During the course of the investigation, I have obtained and reviewed local police reports related to the robberies, reviewed surveillance footage of the robberies, discussed the robberies with responding law enforcement officers, performed surveillance, and obtained court orders, among other investigative activities.

6. Based on my training and experience and my knowledge of the investigation, I believe the series of robberies under investigation were performed by the same suspect. Those robberies are as follows:

   a. In 2016: (1) October 4 armed robbery of 7-11 in Brea; (2) October 19 armed robbery of 7-11 in Pico Rivera; (3) October 21 armed robbery of 7-11 in Norwalk; (4) October 26 armed robbery of 7-11 in Fullerton; and (5) October 27 armed robbery of 7-11 in La Habra;

   b. In 2018: (6) March 27 armed robbery of 7-11 in La Habra (the same victim as the October 27, 2016 robbery); (7) April 5 armed robbery of 7-11 in La Habra (the same victim as the October 27, 2016 and March 27, 2018 robberies); (8) April 7 armed robbery of Chevron gas station in Whittier; (9) April 11

armed robbery of 7-11 in Brea (the same victim as the October 4, 2018 robbery); (10) April 18 armed robbery of Chevron gas station in Brea; (11) April 18 armed robbery of Chevron in Artesia; (12) April 20 armed robbery of Chevron gas station in Cypress, California; (13) April 20 armed robbery of 7-11 in Fullerton (less than two hours after the robbery in Cypress); (14) April 24 armed robbery of Shell gas station in Fullerton (less than one mile from the April 20, 2018 7-11 armed robbery in Fullerton); (15) April 28 armed robbery of Mobil gas station in Fountain Valley; and (16) May 1 robbery of Chevron gas station in Artesia.

    7.    A number of these robberies appear to follow a similar modus operandi. For example:

        a.    In many of the robberies, the suspect selects an item from the store and approaches the counter as if he intends to purchase it. When the clerk is in the vicinity of the cash register, the suspect pulls what appears to be a black semiautomatic handgun and demands cash from the register.

        b.    In many of the robberies, the suspect is carrying a plastic shopping bag.

        c.    In a number of the robberies, the suspect is wearing a baseball hat. Most of the hats appear to be associated with the Brooklyn Dodgers or the Los Angeles Dodgers.

        d.    The suspect often appears to be covering his neck, whether with a cinched-up sweatshirt or other clothing. The suspect is also wearing long-sleeved clothing during many robberies.

8.      The suspect appears to be a Hispanic male, of a roughly consistent build and appearance.

### B.    Identification of SOTELO as a Suspect

9.      In the course of reviewing surveillance photos, and based on my training and experience, I suspected the Brooklyn Dodger hat (which has a "B" logo) could be related to a Buena Park criminal street gang.

10.     On April 25, 2018, I spoke with Investigator Lopez of the Buena Park Police Department gang unit. Investigator Lopez confirmed that Brooklyn Dodgers hats are popular among Buena Park gang members. During the conversation, Investigator Lopez told me that he had reviewed a law enforcement bulletin related to the April 20, 2018 robbery in Fullerton, California, and that the suspect depicted in surveillance photos resembled GERARDO SOTELO. Investigator Lopez said SOTELO is a documented East Side Buena Park gang member with whom Investigator Lopez has personally come into contact during the course of Investigator Lopez's duties in the gang unit.

11.     During the course of the investigation, I also noticed that after the first five robberies occurred in 2016, they abruptly ended on October 27, 2016.

   a.   On October 30, 2016, SOTELO was arrested by the Brea Police Department for possession of a controlled substance and paraphernalia, as well as a parole violation. On October 31, 2016, SOTELO was sentenced to thirty days in custody for the narcotics charge. I have yet to determine the length of any sentence imposed for SOTELO's parole violation.

### C. Warrant for GPS Data Associated With SOTELO's Cellular Telephone

12. On April 30, 2018, based in part on the information set forth in paragraphs 6-10, above, the Honorable Douglas J. McCormick, United States Magistrate Judge, authorized a warrant for GPS location data associated with a cellular telephone believed to be used by SOTELO. I began receiving GPS data pursuant to the warrant later that evening.

### D. May 1, 2018 Robbery of Chevron in Artesia, California

#### 1. Surveillance of SOTELO

13. On the morning of May 1, 2018, Brea Police Department ("BPD") Sgt. Steve Thompson, Det. Ryan McDuffy, Det. Evan D'Huart, ATF SA Hercules Fandino and I (along with several others) performed surveillance of SOTELO based, in part, on data obtained pursuant to the GPS warrant. Based on my personal observations, information relayed to me by the surveillance team, and data obtained pursuant to the GPS warrant, I know the following:

    a. At approximately 7:20 a.m., SOTELO left a residence located at 2319 Deerpark Drive, Fullerton, California (the "Fullerton Residence").[1] Sgt. Thompson saw SOTELO in a black, 1998 Honda Accord sedan (the "Accord").

    b. Sgt. Thompson, Det. D'Huart, and I followed SOTELO to a neighborhood in Cerritos, California, where SOTELO

---

[1] Prior to May 1, 2018, I had identified the Fullerton Residence as an address associated with SOTELO based on my review of various police department and jail records listing a resident of the Fullerton Residence as his emergency contact or associate.

parked the Accord in a cul-de-sac directly behind a Chevron gas station. After several minutes, SOTELO repositioned the Accord on a different street in the same neighborhood, approximately 100 to 200 yards away. He remained in the area for approximately an hour.

    c.    SOTELO then drove to the intersection of Norwalk Boulevard and South Street in Artesia. Sergeant Thompson and I observed SOTELO drive past a 7-11 located at this intersection several times, staring at it as he did so.

    d.    After remaining in the area of that 7-11 for approximately fifteen minutes, SOTELO drove north to another 7-11 on Artesia Boulevard, also in Artesia.

    e.    SOTELO then drove to the area of CA-91 and Pioneer, in Artesia, near two gas stations (a Chevron station and an Arco station). Shortly thereafter, SOTELO was observed by SA Fandino on the side of the Chevron convenience store located at 16725 Pioneer Boulevard, with a hooded sweatshirt pulled over his head and cinched up to his neck. SOTELO remained in that position for approximately 15 to 20 minutes.[2]

    f.    At that point, SOTELO moved from the side of the Chevron to a location where he could observe customers entering and exiting the convenience store as well as the gas pumps.

---

[2] Based on my training and experience, I know that a robbery of a Chevron gas station would impact and affect interstate commerce because Chevron sells merchandise that travels in interstate commerce. Moreover, because this Chevron is positioned near a freeway entrance, it services vehicles traveling in interstate commerce.

After pausing briefly, SOTELO then casually walked to the front door.

      g.    Det. McDuffy was positioned across the street from the Chevron, with a direct view of the entrance to the Chevron convenience store. At approximately 11:55 a.m., Det. McDuffy observed SOTELO enter the Chevron and move quickly toward the cash register. Det. McDuffy saw SOTELO lift his arm up while holding what appeared to be a pistol. SOTELO then moved near to the cash register.

      h.    Approximately thirty seconds later, SOTELO quickly walked from the register to the front door of the Chevron (from his position, Det. McDuffy was unable to observe precisely what happened at the cash register). As soon as SOTELO opened the door to exit, SOTELO began running from the Chevron. Det. McDuffy saw SOTELO cradling in his arms a white plastic bag and what Det. McDuffy believed was some type of box.

**E.    Arrest of SOTELO**

14.    Law enforcement officers began pursuing SOTELO almost immediately after he began running from the Chevron. SOTELO was taken into custody in a matter of seconds, within around 100 yards of the gas station.

15.    At the time of his arrest, SOTELO possessed a black replica firearm in the front pocket of his hooded sweatshirt. SOTELO also possessed approximately twenty-five dollars in rolls of pennies, approximately seventeen dollars in cash in an inside pocket, other loose currency, and a plastic bag.

16. When officers discussed collecting the gun for evidence, SOTELO spontaneously stated, "its a BB gun."

**F. Events of the Robbery**

17. Moments after the robbery, Det. McDuffy interviewed the victim clerk and learned the following:

   a. When SOTELO entered the Chevron, the clerk was away from the cash register heating up food. SOTELO leaned over the counter and pointed the gun toward the ground, apparently believing the clerk was crouched behind the register. The clerk then saw the black gun. SOTELO pointed the gun at the clerk, directed the clerk to walk around to the register, and then said, in substance, "give me the money."

   b. SOTELO gave the clerk a plastic bag and told the clerk to put the money in the bag. The clerk then put an unspecified amount of U.S. currency into the plastic bag. SOTELO next demanded the coin box and the clerk complied. As SOTELO moved away from the counter, the plastic bag broke from the weight of the coins, and all of the stolen money fell to the floor. SOTELO then demanded that the clerk put the money back into the bag, and the clerk complied.

   c. Just before SOTELO left the Chevron, the bag broke again. SOTELO again demanded that the clerk re-fill the bag. The clerk again complied. At that point, SOTELO ran from the Chevron.

   d. The victim clerk also said that he had been robbed at gunpoint by the same suspect on April 18, 2018. The clerk showed Det. McDuffy a video of the April 18, 2018 armed

robbery (which I have reviewed). The clerk knew it was the same perpetrator in both robberies because of the robber's face, and because the robber cinched up his sweatshirt to cover his neck.

  e. Throughout the interview, the clerk was visibly shaken as a result of the robbery.

 **G.** **Search of the Fullerton Residence**

 18. After SOTELO was taken into custody, I went to the Fullerton Residence with other ATF agents. Kevin Lew, the owner of the residence, provided oral and written consent to search his residence. Mr. Lew identified the bedroom in which SOTELO (who he referred to as "Gerry") and his daughter slept.

 19. Inside of the bedroom I found the following, among other things:

  a. Four Brooklyn Dodger hats with a "B" logo, two of which appeared to match a hat worn during an earlier robbery believed to have been conducted by SOTELO;

  b. Two Los Angeles Dodger hats; and

  c. Two grey Walmart shopping bags similar to the plastic bags used during earlier robberies believed to have been conducted by SOTELO.

 **H.** **Interview of SOTELO**

 20. In the late afternoon of May 1, 2018, Det. McDuffy and I conducted a recorded, <u>Mirandized</u> interview of SOTELO.[3] During the interview, I showed SOTELLO photographs from surveillance

---

[3] I also <u>Mirandized</u> SOTELO shortly after his arrest, at which time SOTELO, among other statements, confirmed that his telephone number was the same as the telephone number for which I had obtained a GPS warrant.

video of robberies under investigation. SOTELO confirmed that he was depicted in images from at least four of the robberies that had occurred in the past several weeks. SOTELO also believed that he conducted two to three of the 2016 robberies under investigation, but he did not recall the locations or dates. SOTELO explained that he regularly using heroin at the time he conducted robberies; as a result he did not recall every robbery.

I.   **SOTELO's Criminal History**

21.   I researched SOTELO's criminal history in law enforcement databases and learned that SOTELO has the following theft-related convictions:

   a.   On September 22, 2009, SOTELO was convicted of misdemeanor taking a vehicle without the owner's consent.

   b.   On September 16, 2011, SOTELO was convicted of second degree robbery, and sentenced to two years' imprisonment.

   c.   On February 7, 2012, SOTELO was convicted of misdemeanor theft.

   d.   On August 29, 2012, SOTELO was convicted of participating in a criminal street gang and second degree burglary, both of which were misdemeanors.

//
//

## IV. CONCLUSION

22. For all the reasons described above, there is probable cause to believe that SOTELO has committed a violation of 18 U.S.C. § 1951(a) (Interference with Commerce by Robbery).

/s/
Ryan J. Stearman, Special Agent, ATF

Subscribed to and sworn before me this 2 day of May, 2018.

**DOUGLAS F. McCORMICK**
HONORABLE DOUGLAS F. MCCORMICK
UNITED STATES MAGISTRATE JUDGE